**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **WILLIE[1] GOLATT,** | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | Civil Action No. **3:20-CV-03397-L** |
| | § | |
| **PEROT MUSEUM OF NATURE** | § | |
| **AND SCIENCE,** | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the court is Defendant Perot Museum of Nature and Science's Motion for Summary

Judgment ("Motion") (Doc. 32), filed on October 22, 2021.  After careful consideration of the

Motion, response, reply, briefs, appendices, record, and applicable law, the court **grants in part**

and **denies in part** the Motion (Doc. 32).

**I.      Factual and Procedural Background**

Plaintiff Willie Golatt ("Plaintiff" or "Mr. Golatt") brought this action against Defendant

Perot Museum of Nature and Science ("Defendant" or "PMNS") on November 13, 2020.  In his

Complaint, Mr. Golatt contends that PMNS discriminated against him because of his race in

violation of 42 U.S.C. § 1981.  Plaintiff seeks back pay; front pay and benefits; actual damages;

compensatory damages; damages for emotional distress, loss of reputation, and humiliation;

punitive damages; prejudgment and postjudgment interest; and attorney's fees, expert fees, and

costs of suit.

---

[1] Plaintiff's first name is "Willie," and the court **directs** the clerk of court to amend the docket sheet to
include Plaintiff's first name.

The record establishes that in 2012, Mr. Golatt, an African-American male, began working in Information Technology ("IT") at PMNS as an employee of Dell Computer Corporation ("Dell").  At that time, PMNS had received a three-year grant from Dell to provide Defendant with IT infrastructure and services.  In 2014, as the grant was set to expire, Mr. Golatt accepted an offer from PMNS's Chief Information Officer David Humphries ("Mr. Humphries") to work directly for Defendant as an IT Support Manager.  Mr. Humphries did not post the position, and Mr. Golatt did not interview for the position.  In this new position, Plaintiff staffed his own team of technicians who reported directly to him.  In 2015, Mr. Golatt received an annual performance evaluation of "solid performer" from Mr. Humphries, who noted that Plaintiff had "opportunities for growth" in his IT Support Manager position.

Plaintiff alleges that Defendant discriminated against him when, through Mr. Humphries, it promoted Jason Taylor ("Mr. Taylor"), a white PMNS employee, from Application Support Lead—a nonmanagerial position—to Senior Manager of IT on July 18, 2017, passing over Mr. Golatt for the position.  The record is clear that Mr. Humphries considered only Mr. Golatt and Mr. Taylor for this position and did not post or conduct interviews for it, which was in violation of PMNS's written employment policies.  Mr. Taylor received a performance evaluation of "exceeds expectations" from Mr. Humphries in 2015.  An evaluation of "exceeds expectations" is one level higher than that of "solid performer."

On October 22, 2021, PMNS filed its Motion with respect to Mr. Golatt's sole claim for race discrimination.  Defendant contends that there is no evidence that supports a reasonable inference that but for race discrimination Mr. Golatt would have received the promotion to Senior Manager of IT and, therefore, summary judgment is appropriate.

**Memorandum Opinion and Order – Page  2**

## II.     Motion for Summary Judgment Standard

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).  A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party.  *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).  Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact.  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).  On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor."  *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original).  "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'"  *Matsushita*, 475 U.S. at 587.  (citation omitted).  Mere conclusory allegations are not

competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id*. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

## III.   Discussion

### A.  Standard for Racial Discrimination Under 42 U.S.C. § 1981

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings . . . as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981(a). To prove a claim of intentional discrimination under Section 1981, a plaintiff can employ either direct or circumstantial evidence. *Bright v. GB Bioscience Inc.*, 305 F. App'x 197, 201 (5th Cir. 2008) (footnote and citations omitted).

**Memorandum Opinion and Order – Page  4**

In a failure-to-promote claim brought pursuant to 42 U.S.C. § 1981, the *McDonnell Douglas* framework or burden-shifting analysis applies, which first requires a plaintiff to "establish a prima facie case of discrimination." *Johnson v. Pride Indus., Inc.*, 7 F.4th 392, 406 (5th Cir. 2021) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).[2]  As aptly stated by the Fifth Circuit:

> To establish a prima facie case of discrimination based on a failure-to-promote theory, a plaintiff must show that (1) he is a member of a protected class; (2) he sought and was qualified for a position for which applicants were being sought; (3) he was rejected for the position; and (4) the employer either (a) hired a person outside of the plaintiff's protected class, or (b) continued to seek applicants with the plaintiff's qualifications.  Next, if the plaintiff carries his burden to establish a prima facie case, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the underlying employment action.  And if the employer satisfies this burden, the plaintiff must then provide adequate evidence to show the reason proffered by the employer is a mere pretext for unlawful discrimination.

*Id.* (citations omitted).

As Defendant correctly observes, "[t]he U.S. Supreme Court has ruled that a plaintiff alleging race discrimination under Section 1981 must plead and has the ultimate burden to show that race was the *but-for cause* of the plaintiff's injury." Def.'s Br. in Supp. of Mot. ("Def.'s Br.") 8 (citing *Comcast Corp. v. National Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009 (2020) (emphasis in original); *see also Williams v. Waste Mgmt., Inc.*, 818 F. App'x 315, 325 (5th Cir.

---

[2] Although *McDonnell Douglas* involved a Title VII claim, the summary judgment analysis is the same for claims of race discrimination under Title VII and Section 1981. *Sanders v. Christwood*, 970 F.3d 558, 561 n.7 (5th Cir. 2020) (citation omitted).  Further, as Plaintiff provides no direct evidence of racial discrimination, a court must apply the *McDonnell Douglas* burden-shifting framework.  *Id.* at n.8 (citation omitted).  "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference." *Sanstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002) (citation omitted).  If direct evidence of discrimination is produced by a plaintiff, the burden shifts to the defendant to establish that it would have made the same decision notwithstanding the discriminatory animus.  *Id.* at 896 (citation omitted).  Accordingly, for reasons later set forth herein, the court determines that this is a circumstantial evidence case.

2020).  Under the *but-for cause* standard, "a plaintiff must demonstrate that, but for the defendant's unlawful conduct, [his] alleged injury would not have occurred."  *Comcast*, 140 S. Ct. at 1014. Although a plaintiff must initially plead and ultimately prove that, but for race, he would not have suffered the loss of a legally protected right, at the summary judgment stage, such plaintiff only needs to present sufficient evidence to raise a genuine dispute of material fact regarding pretext to defeat the granting of summary judgment.  Notwithstanding any argument to the contrary, the *McDonnell* burden-shifting framework is still applicable and in line with Fifth Circuit cases published subsequent to *Comcast*, and the court will apply that framework in ruling on the Motion. *See Johnson*, 7 F.4th 392, 406 (5th Cir. 2021); *Sanders v. Christwood*, 970 F.3d 558, 561-62 (5th Cir. 2020) (citations omitted).

### B. Analysis

#### 1. *Prima Facie* Case

With respect to the first, third, and fourth factors, the record is clear that Plaintiff has established that he was not promoted; as an African American, he fell within a protected class when he was passed up for the promotion; and PMNS promoted Mr. Taylor, a white person outside of Mr. Golatt's protected class.  Defendant contends, however, that Plaintiff nevertheless cannot establish a prima facie case because "he is not qualified for the position sought, Senior Manager of IT."  Def.'s Br. 9.  According to PMNS, Mr. Golatt fails to provide sufficient evidence to support his contentions that he was qualified for the position, which is the second factor necessary to establish a prima facie case.  *See id.*  The court disagrees.

In addition to his testimony regarding his qualifications, *see* Def.'s App. of Evidence ("Def.'s App.") 14, Mr. Golatt offers his resume and declaration testimony, and the declaration testimony of three former PMNS employees who state that his qualifications were superior to those

of Mr. Taylor.  *See* Pl.'s App. of Summ. J. Evid. ("Pl.'s App.") 75-87.  Defendant argues that Plaintiff's proffered evidence is insufficient to establish that Mr. Golatt was qualified for the position.  The court would agree *if* this were the only evidence before the court, but it is not.  Some, but not all, of the testimony offered by two of the three former employees is conclusory and subjective.  As the court noted earlier, it is well-established that "mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment."  *Eason*, 73 F.3d at 1325 (citation omitted).  One piece of competent summary judgment evidence contained in two of the former employees'—Garrett L. Brown ("Mr. Brown") and Alex Caudill ("Mr. Caudill")—declarations is their testimony that "*[Mr.] Golatt built the IT Department at [PMNS]*, and mentored and trained several other IT employees over the years."  Pl.'s App. 75, 77 (emphasis added).  Messrs. Caudill and Brown worked directly under Mr. Golatt during his tenure at PMNS, and the third employee worked outside the IT department.  Plaintiff's two reports do have *some* firsthand knowledge of Mr. Golatt's competence, experience, and qualifications, as well as that of Mr. Taylor.  To assert otherwise defies common sense and logic.

On the other hand, the third person, Ms. Jennifer Quaranto, was not hired by PMNS until January 2019, some eighteen months after Mr. Taylor was promoted.  As she was not an employee of PMNS at the time of Mr. Taylor's promotion, Ms. Quaranto has no firsthand knowledge of the facts relevant to his promotion, and the court disregards her declaration in its entirety insofar as it relates to her perception of both men's qualifications for the position of Senior Manager of IT.

Additionally, Plaintiff's resume lists his extensive background and experience in IT, including managing other employees in a prior position at Dell, as well as his managerial position at PMNS.  *See* Pl.'s App. 84-87.  After considering Plaintiff's declaration, deposition testimony,

as well as his resume, the declarations of Messrs. Brown and Caudill—and even that of Mr. Humphries—the court has no doubt that Mr. Golatt was certainly qualified to be promoted to the position of Senior Manager of IT.

Moreover, PMNS necessarily concedes that "[Mr.] Humphries considered [Mr.] Taylor and [Mr.] Golatt as his two options for the Senior Manager role." Def.'s Br. 7 (citing Def.'s App. 43). As Plaintiff correctly points out, "[t]hat [Mr.] Humphries stated that he considered [Mr.] Golatt for the position directly contradicts Defendant's arguments [that he was not qualified for this position]." Pl.'s Resp. 14. This evidence, viewed in the light most favorable to Plaintiff as the nonmoving party, clearly supports a reasonable inference that Mr. Humphries considered Mr. Golatt for the position *because* he was qualified for it; otherwise, it would be nonsensical for him to even consider Plaintiff for the position if he were not qualified. There is no evidence in the record that Plaintiff was considered for the position *despite* having a lack of qualifications. Therefore, the court determines that Mr. Golatt was certainly qualified for the position of Senior Manager of IT. Accordingly, the court determines that Plaintiff has established his *prima facie* case for failure to promote. The burden now shifts to Defendant to articulate or set forth a legitimate, nondiscriminatory reason for not promoting Plaintiff.

### 2. Legitimate, Nondiscriminatory Reasons

Defendant contends that Mr. Golatt was not promoted for a legitimate, nondiscriminatory reason, because "[Mr.] Humphries had noted issues in [Mr.] Golatt's past performance and judgment." Def.'s Br. 11. In 2015, Mr. Humphries conducted Mr. Golatt's annual performance evaluation. In his evaluation, Mr. Humphries noted that Plaintiff had "opportunities for growth" in two areas: (1) planning and organizing (commenting that "[b]y being more systematic in managing [his] day to day business[,] [Plaintiff] will be able to focus and finish [his] initiative

based tasks while allowing adequate time for incident resolution."); and (2) further empowering his team (commenting that "as [his] team continues to grow their skills and as [Plaintiff] begin[s] to harvest the benefit of increased planning and organizing, [he] should begin to be able to allow [his] team to execute more independently and rely on [his] process to track progress."). Def.'s App. 216. Mr. Humphries contextualized this second area as an opportunity for growth during his deposition testimony:

> You know that pretty much anything that [] broke[,] the whole team would be down working on it and that was not necessary. So, I asked [Mr. Golatt] if it's a training issue, we need to get the training issue resolved. If it's, you know, an issue where somebody's gonna get hurt, then yeah, you need to have the right precautions in place. But [if] it's just somebody fixing something, one person can get up and do it; three or four people don't have to do it. That never really got resolved.

*Id*. at 45-46. In a nutshell, PMNS contends that Mr. Golatt's planning and organizational skills needed improvement in that he did not manage his team in a way that maximized efficiency because he often assigned more persons than necessary to address IT issues, which caused his team not to function as effectively as it could have, and that this problem was never corrected by Mr. Golatt. Mr. Humphries also testified in his deposition that Mr. Golatt booked a trip to Rome, Italy, without clearing it with him before purchasing the ticket for the two-week trip. Mr. Humphries, as Plaintiff's boss, believed that Mr. Golatt should have informed him of the trip to Rome, and that the failure to do so showed poor judgment on Plaintiff's part. On their face, these serve as legitimate, nondiscriminatory reasons articulated or set forth by Defendant.

### 3. Pretext

The court now turns to the issue of pretext. Mr. Golatt argues that PMNS's decision not to promote him was pretextual for four reasons:

> (1) disparate treatment evidence in the form of discriminatory remarks that [Mr.] Humphries made directly to [Mr.] Golatt, (2) evidence that the proffered explanation for promoting [Mr.] Taylor over [Mr.] Golatt is false or unworthy of

credence, (3) evidence that Defendant failed to comply with its own written employment policies in connection with the creation and hiring of the Senior Manager of IT position, and (4) the fact that [Mr.] Humphries did not even give [Mr.] Golatt the opportunity to interview for the promotion.

Pl.'s Resp. 15-16.  The court will address each argument as necessary.

### a.  Nature of the Allegedly Discriminatory Statements

Plaintiff argues that Mr. Humphries made several discriminatory remarks or statements that show he was treated differently.  The court has serious concerns regarding the statements because they are lacking in detail and specificity, and the evidence surrounding them was not fully developed during Mr. Golatt's deposition or in his declaration.  Plaintiff did not sufficiently clarify or explain in his declaration why Mr. Humphries's statements showed a racially discriminatory animus toward him.  As the court has to infer or presume that a discriminatory animus based on race existed, it applies the *McDonnell Douglas* analysis.

According to Mr. Golatt, Mr. Humphries asked him whether he knew "how to pick a good watermelon" on several occasions, brought up the subject of the "absentee" Black father with him more than once, and used the phrase "jerry-rigging" on a number of occasions, which Plaintiff interpreted to mean "N-rigging".  Based on the current state of the record, these comments or statements made by Mr. Humphries are lacking in detail, context specificity and temporal proximity to raise a genuine dispute of material fact that he intentionally discriminated against Mr. Golatt because of his race by promoting Mr. Taylor to the Senior Manager position on July 18, 2017.  Stated another way, Plaintiff fails to develop sufficient evidence for the court to determine that the inquiries or statements made by Mr. Humphries raise a genuine dispute of material fact regarding pretext.

First, as these statements, inquiries, or remarks lack context, detail, specificity, time, and tone—as well as temporal proximity—to establish, or raise a genuine disputed of material fact that

Mr. Humphries's decision to promote Mr. Taylor instead of Mr. Golatt to Senior Manager of IT meets the requisite but-for cause standard regarding the promotion.  Plaintiff does not state with any specificity when the statements were made, and in particular he does not assert or declare that the statements were made prior to the time Mr. Humphries promoted Mr. Taylor.  For example, Plaintiff testifies that one remark regarding the "absentee" Black father occurred may have occurred in 2017 or 2018.  These dates provide no context as to whether race was the but-for cause of Mr. Humphries's passing over him and promoting Mr. Taylor to Senior Manager of IT.  Further, Plaintiff provides no dates as to when the "watermelon" or "jerry-rigging" statements occurred.

Second, Mr. Golatt assumes, with scant support, that the inquiries or statements made by Mr. Humphries are evidence of discriminatory intent; however, such assumption and speculation fall far short of raising an issue of discriminatory intent.  This is so because "[t]he speaker's meaning may depend on various factors including context, inflection, tone of voice, local custom, and historical usage."  *Ash v. Tyson*, 546 U.S. 454, 456 (2006).  The court determines that application of the *Ash* factors, except for local custom, is relevant to this case, and they do not support a causal connection to infer discriminatory intent regarding the promotion of Mr. Taylor.  Although the court does not believe that the statements or remarks provide a sufficient nexus or causal connection to raise a genuine dispute of material fact regarding pretext, it does determine that other evidence in the record sufficiently raises a genuine dispute of material fact regarding pretext to defeat in part the Motion, which it later discusses.

Third, Mr. Humphries, at no time, referred to Mr. Golatt or any other Black person by using a racial slur or epithet.  Mr. Humphries did not use any of the following demeaning, derogatory, insulting, or offensive racial terms in referring to or addressing Mr. Golatt:  "alligator bait," "ape," "biscuit lips," "black jelly bean," "blackie," "blick," "boy," "Buckwheat," "burnt toast," "coon,"

"crow," "cuffy or cuffie," "darkey or darkie," "eight ball," "ghetto," "ghost," "George," "groid," "Hambone," "inkspot," "jigaboo," "jungle bunny," "midnight," "moon cricket," "mud shark man," "N-word," "niglet," "oil slick,"  "porch monkey," "reggin," "Sambo," "shine," "Smoked Yankee," "spade," "spearchucker," "splib," "spook," "tar baby," "Uncle Ben," "Uncle Remus," "Uncle Tom," or any other racial epihet or racially derogatory word or phrase used to refer to Black persons.  The court now examines more closely each group of statements.

*i. Absentee Black Fathers*

According to Plaintiff, one statement occurred "maybe around [2017] or 2018," when Mr. Humphries showed him a series of pictures posted to Facebook by one of Mr. Humphries's Black friends depicting a Black father abandoning his son.  *See* Pl.'s App. 12.  Mr. Golatt testified that Mr. Humphries then asked him "several times" whether it is true that Black fathers are not in the home.  *Id*.  Plaintiff also testified that Mr. Humphries was aware that his own father had left when he was a teenager.  *Id*. at 12-13.  While Mr. Humphries's remarks were awkwardly made, demonstrated cultural insensitivity, and showed a total lack of savoir faire, Plaintiff has not presented the court with sufficient evidence to show discriminatory animus based on race.  An inquiry or statement alone as made by Mr. Humphries is insufficient.  It is not uncommon for persons to inquire of another's customs, culture, habits, or environment.  Such inquiries, however, should be done tactfully, if at all, because of the sensitivity of the issue; otherwise, such comments will be misunderstood or misinterpreted and cause litigation to ensue, as this case amply demonstrates.

As previously noted, it is unknown whether Mr. Humphries made these remarks some time prior to or after he promoted Mr. Taylor to the position of Senior Manager of IT instead of Plaintiff.  If these remarks were made after Mr. Humphries made the decision to promote Mr. Taylor, that

is, after July 18, 2017, they cannot, without more, serve as the basis for any discriminatory intent regarding Mr. Humphries's decision to promote Mr. Taylor.  If these remarks were made before Mr. Taylor was promoted, no evidence has been presented to the court to show temporal proximity with respect to the date of any statement and the date of the decision to promote was made.  Was it years, months, or days?  The record is totally silent on this crucial evidence, and it is too late to produce evidence at the summary judgment stage.  Although Mr. Golatt submitted a declaration to defeat Defendant's Motion, he did not clarify, explain, or supplement his deposition testimony regarding temporal proximity or any of the *Ash* factors.

Mr. Golatt also testified that Mr. Humphries inquired about "absentee Black fathers" at a Christmas party.  *Id.* at 13.  Again, the record is unclear when Mr. Humphries made this inquiry.  According to Mr. Golatt, Mr. Humphries asked him, "So how do y'all feel" if the father is not there?  *Id.*  This comment could be considered insensitive, culturally inappropriate, or one made out of ignorance, but Plaintiff fails to show any discriminatory animus based on race, or that there is a causal connection between any of these remarks and his failure to be promoted.  He has not presented sufficient evidence from which a reasonable jury could find that Mr. Humphries's remarks or questions about "absentee Black fathers" constituted discriminatory animus based on race.

*ii Watermelon Statements*

Mr. Golatt testified that Mr. Humphries stated that he loved watermelon and asked on multiple occasions whether Plaintiff "know[s] how to pick a good watermelon."  *Id.* at 15.  Plaintiff has not shown that Mr. Humphries's inquiries or statements concerning "watermelon" have any racial animus in the context made.  When asked whether he believes these comments were racial, Plaintiff testified, "I don't know.  I'm pretty sure it is.  To me, I take it as."  *Id.*  At best, this is Mr.

Golatt's subjective belief and is not sufficient evidence to support a finding of racially discriminatory animus by a reasonable jury.

With respect to the "watermelon" comments that Mr. Golatt attributes to Mr. Humphries, this comes from a stereotype (dating back to well over 150 years) that Blacks or African-Americans have an insatiable desire for watermelon and that they are extremely content when they are able to obtain it.  Often, there are images or caricatures of an extremely dark-complexioned Black person or child who is eating watermelon and depicted with exaggerated, red lips, grinning from ear-to-ear, and speaking in a manner that is considered to be substandard English.  Many persons consider these images or caricatures to be racist, and there are individuals who have no hesitation in using them in a derogatory and racist manner against Black persons or African Americans.

On October 1, 2014, a cartoon appeared in the *Boston Herald* that depicted an intruder taking a bath in President Barack Obama's bathroom while the President was brushing his teeth. The intruder asks, "Have you tried the new watermelon flavored toothpaste?"  In another incident in February 2009, Mayor Dean Grose of Los Alamitos, California, sent an e-mail to the White House that depicted the White House lawn planted in watermelons.  The caption of the e-mail reads: "No Easter Egg Hunt This Year."   Both incidents received widespread criticism and backlash as being racist from various sources, and justifiably so, as there was no question that the e-mail and cartoon smacked of rank racism!  Mayor Grose later resigned as a result of the e-mail. The court takes judicial notice of these two incidents pursuant to Federal Rule of Evidence 201 (b)(2), as they appeared in numerous newspapers and social media platforms across the United States, and the accuracy of these sources "cannot be reasonably questioned."

**Memorandum Opinion and Order – Page  14**

The inquiries or statements made by Mr. Humphries, based on the record evidence, did not convey the racial animosity or discriminatory intent as did those in the two preceding examples regarding the watermelon statements involving President Obama and the White House.  Mr. Humphries's statements alone are insufficient to show racial animus toward Mr. Golatt with respect to the promotion of Mr. Taylor.

*iii. Jerry-rigging*

Plaintiff testified that Mr. Humphries used the term "jerry-rigging" with a wink or nod when they worked on or fixed equipment that needed to be repaired.  *Id*. at 13.  With respect to the "jerry-rigging" term, Mr. Golatt testified that "[i]t would be like [a] joke because we kn[e]w he didn't use the . . . N word."  *Id*.  In his response, Plaintiff clarifies that "[o]n multiple occasions, [Mr.] Humphries would comment that when they were trying to fix something, they would be 'jerry-rigging' it and he would come up with a nod or wink-wink, indicating that he could not say the other word for it, which was the 'n' word."  Pl.'s Resp. 17 (citing Pl.'s App. 13, 82-83).

The undersigned understands the connection that Mr. Golatt is attempting to make.  When fixing or repairing something in an improvised, hurried, less-than-professional and temporary manner, some people have referred to this action as "[N-word]-rigging."  The court notes that, "[b]ecause of [N-word]'s history, using [it] to refer to an individual or group, particularly in the employment context, typically will imply discriminatory animus on the part of the speaker, regardless of whether the speaker believes he uses such words in jest."  *Lockhart v. Republic Servs., Inc.*, No. 20-50474, 2021 WL 4955241, at *4 (5th Cir. Oct. 25, 2021).  *As previously stated, however, Mr. Humphries never used the "N-word" or any other racial slur or epithet in addressing or referring to Mr. Golatt or any other Black person.*  Plaintiff has again failed to present the court with sufficient evidence to connect this statement to discriminatory animus on Mr. Humphries's

part.  The generally accepted meaning of "jerry-rigged," is "organized or constructed in a crude or improvised manner."  Merriam-Webster's Collegiate Dictionary 671 (11th ed. 2014).

The flaw in Plaintiff's argument is that he attempts to read Mr. Humphries's mind.  No person can fathom or scrutinize the operations of the human mind.  Plaintiff is not clairvoyant, and it is impossible, without more factual bases, for him to know or reasonably infer what Mr. Humphries intended or meant when he used the term "jerry-rigging."  The inference that Plaintiff draws from the "nod" or "wink-wink" is conjecture and speculation on his part, as there are no specific or underlying facts to support his subjective belief or conclusion that Mr. Humphries was substituting the phrase "jerry-rigging" for "N-rigging."  Thus, the inference Mr. Golatt draws is impermissible.  The "nod" and "wink-wink" mentioned by Plaintiff could certainly mean that the repairs would be a quick fix to the equipment until there was adequate time to properly fix or repair it.  Nothing in the record shows that there was any prior conduct or statement that Mr. Humphries was made aware or knew that use of the term "jerry-rigging" was considered to be racist or offensive to Mr. Golatt or Black persons.  That Mr. Humphries used the term "jerry-rigging," without more, is not sufficient evidence of a racially discriminatory animus.  According to Plaintiff, Mr. Humphries would use this term "when he would fix [equipment] with tape or . . . with a zip tie." Pl.'s App. 13.

After a review of the evidence in the record, Plaintiff's contentions about Mr. Humphries's statements or remarks lack detail and specificity as to context and temporal proximity to his decision to promote Mr. Taylor instead of Mr. Golatt.  In other words, Plaintiff does not state the date on which any of these statements was made with sufficient specificity, and he does not adequately address or produce evidence of the factors in *Ash* that apply in this case.  Therefore, the court cannot find the requisite causal connection between these inquiries and remarks, and the

failure of Mr. Golatt to be promoted because of his race.  By Mr. Golatt's own admission, Mr. Humphries used the term in a manner consistent with the definition accorded it in Merriam-Webster's Collegiate Dictionary.

### b. PMNS's Failure to Comply with Its Written Employment Policies and Allow Plaintiff an Opportunity to Interview

Plaintiff further contends that Defendant's failure to comply with its own employment policies and offer interview opportunities for the position of Senior Manager of IT shows that its reasons for not promoting him were pretextual.  The court is not persuaded by this argument.

The summary judgment evidence is clear that when Mr. Humphries offered and ultimately hired Mr. Golatt for the IT Support Manager Position, he did so without posting the job or interviewing Plaintiff or any other candidates.  As this was done in violation of PMNS's written employment policies when Mr. Humphries initially promoted Mr. Golatt to the IT Support Manager Position, there was no difference in treatment when Mr. Humphries promoted Mr. Taylor to the position of Senior Manager of IT, as he did not follow PMNS's written employment procedures with respect to Mr. Taylor's promotion.

This is so because, in the absence of proof that a plaintiff was treated differently than other nonminority employees, a defendant's failure to follow its written policies is not probative of discriminatory animus.  *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 346 (5th Cir. 2007) (citation omitted).  Plaintiff has not shown that he was treated differently than was Mr. Taylor or any other nonminority employee.  In other words, Mr. Golatt has not provided any evidence to create a genuine dispute of material fact in this regard, because he, as a Black male, benefited from the same practice or process when he was hired by Mr. Humphries.  There is no evidence that PMNS applied its policies differently in cases involving Black employees and white employees. In other words, PMNS failed to follow its own written policies in one instance when the person

Memorandum Opinion and Order – Page  17

promoted was African American and in another instance when the person promoted was Caucasian. While it appears that upper management of PMNS needs retraining or a stricter adherence to its written policies and procedures, the failure to adhere to them did not result in any racial discrimination against Plaintiff. Therefore, PMNS's failure to follow its written policies and procedures regarding Mr. Taylor's promotion to the position of Senior Manager of IT, while not a cause for approbation, may not serve as a basis to establish pretext.

### c. "Same Actor Inference" Rule

To bolster its argument that Plaintiff has not established or raised a genuine dispute of material fact regarding pretext for not promoting him, PMNS contends that the "same actor" inference should apply in this case, because Mr. Humphries was "fully aware" of Mr. Golatt's race when he initially hired Plaintiff in 2014. Def.'s Br. 11-12. Plaintiff responds that this inference should not apply here because the Fifth Circuit has never applied it "in a discriminatory failure to promote case." Pl.'s Resp. 29. This assertion by Plaintiff is incorrect. Likewise, PMNS misapprehends the applicable law regarding the "same actor" inference.

"The same actor inference creates a presumption that animus was not present where the same actor responsible for the adverse employment action either [initially] hired or promoted the employee at issue." *Spears v. Patterson UTI Drilling Co.*, 337 F. App'x 416, 421-22 (5th Cir. 2009); *Hackett v. United Parcel Serv.*, 736 F. App'x 444, 451 n.2 (5th Cir. 2018). As terminations, demotions, and failures to promote are all adverse or tangible employment actions, the court finds that the "same actor" inference could apply in a failure-to-promote case; however, this is not the end of the story.

Even though Mr. Humphries initially hired Mr. Golatt, "the inference is not automatic." *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 228 n.16 (5th Cir. 2000). Facts relevant to this

argument may be presented to the jury for consideration, and it falls within the province of the jury to decide whether the "same actor" inference should apply in this case, as it is a question of fact rather than one of law.  As stated in *Russell*, "the 'same actor' inference 'does not rule out the possibility that an individual could prove a case of discrimination.'"  *Id.* (citation omitted).  Accordingly, Defendant's "same actor inference" argument fails at the summary judgment stage.

### d.  Clearly Better Qualified

#### *i. Applicable Law*

Plaintiff contends that he was clearly better qualified for the position of Senior Manager of IT than was Mr. Taylor.  For this reason, he contends that he has raised a genuine dispute of material fact regarding pretext and that Defendant's Motion should be denied.  PMNS disagrees and argues that Plaintiff has not presented sufficient evidence to raise a genuine despite of material fact regarding his failure to be promoted to Senior Manager of IT.  The court disagrees with PMNS.

Being more qualified than a person, or as qualified, who is promoted is not sufficient to show racial discrimination.  To defeat a summary judgment motion, the unsuccessful employee must raise a genuine dispute of material fact that he was "clearly better qualified (as opposed to merely better or as qualified)."  *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 5th Cir. 2010). (internal quotation marks and citation omitted).  Mr. Golatt, therefore, must present evidence from which a jury could conclude that "no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question."  *Id.*  (citation omitted).

According to Defendant, "[D]isparities in qualifications are not enough in and of themselves to demonstrate discriminatory intent unless those disparities are so apparent as to virtually '"jump off the page and slap you in the face."'  Def.'s Reply Br. 12 (quoting *Deines v.*

**Memorandum Opinion and Order – Page  19**

*Texas Dep't of Prot. Regul. Servs.*, 164 F.3d 277, 279 (5th Cir. 1999).  Defendant's reliance on this language in *Deines* is misplaced.  The Supreme Court soundly rejected the language in *Deines* when it stated, "The visual image of words jumping off the page to slap you (presumably a court) in the face is unhelpful and imprecise as an elaboration of the standard for inferring pretext from superior qualifications."  *Ash*, 546 U.S. at 457.  The definition in *Moss,* is what guides the court, which is strikingly similar to that used in *Ash* when the Supreme Court observed that "disparities in qualifications must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question."  546 U.S. at 457 (internal quotation marks and citation omitted).  Regarding *Deines*, the Fifth Circuit stated: "We are confident that this standard comports with the directive in *Ash*."  *Gillaspy v. Dallas Indep. Sch. Dist.,* 278 F. App'x 307, 314 (5th Cir. 2008).

### ii. Evaluations of Messrs. Golatt and Taylor

Defendant significantly overstates the importance of the evaluations received by Messrs. Golatt and Taylor.  As previously noted, Mr. Taylor was rated as "exceeding expectations," and Mr. Golatt was rated as a "solid performer."   PMNS makes much of Mr. Taylor's "higher evaluation," but this, by no means, tells the whole story and, for the reasons later discussed, has extremely limited value.

After reviewing the record, the court notes that Mr. Taylor received a rating of "4" which falls into the category of "exceeds expectations."  The average of all the subcategories in which Mr. Taylor was rated yielded an overall score of 3.777, which was rounded to 3.78, as the calculated score.  On the other hand, Mr. Golatt received a score of 3.33, and it was not adjusted. The argument that Mr. Taylor received a score that was one level higher than Mr. Golatt is misleading and takes matters out of context.  The true difference between the two men's scores is

.45 of a point.  In other words, both men fall in the category of "solid performer," yet Mr. Taylor's score was raised to a rating of "4" by Mr. Humphries.  In raising Mr. Taylor's score, Mr. Humphries testified that if the calculated score does not "match reality," he would "go back and change the components" and that "his opinion at that point in time was that Mr. Taylor's performance exceeded expectations."  Def.'s. App. 39.  Nowhere does he explain what "reality" is or which facts support raising Mr. Taylor's evaluation to a "4," which resulted in the "exceeding expectations" category.  His testimony in this regard is conclusory and bereft of specificity.

The court is fully aware that courts are not to use employment discrimination statutes as "a vehicle to for judicial second-guessing of business decisions . . . or to transform the courts into personnel managers."  *Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005) (internal quotation marks and citation omitted).  This principle of law, however, is not absolute, as the law requires that the employer's decision be "'somewhere within the realm of reason.'"  *Manora v. Donahoe*, 439 F. App'x 352, 375 (5th Cir. 2011) (quoting *Deines*, 164 F.3d at 282).  The reasonableness of Mr. Humphries's decision necessarily goes to the crux of pretext because his credibility, which is to be determined by the jury and not the court, is in play.

Further, with respect to the evaluations, the court fails to understand why Defendant places so much weight on them.  The evaluation for both men was the one-year period from October 1, 2014, to September 30, 2015.  During the evaluation year, Messrs. Golatt and Taylor had different job duties and responsibilities.  Mr. Golatt managed several people during the evaluation period, while Mr. Taylor did not mange anyone.  Managing or supervising other employees necessarily calls for more accountability and responsibility.  The court sees little utility in comparing the evaluations of two employees when one, as reflected by the competent summary judgment evidence, had no managerial or supervisory duties and responsibilities, and the other employee

did.  It is the classic case of comparing "apples to oranges."  Not only is a manager or supervisor held accountable for his performance but also for that of his reports.  Comparing Mr. Taylor's evaluation with that of Mr. Golatt does not bode well for Defendant, because Plaintiff and Mr. Taylor were not similarly situated employees.  Stated another way, Defendant's argument in this regard is fundamentally flawed insofar as it relates to the absence of pretext.

Moreover, regarding Mr. Golatt's evaluation, the court observes that PMNS hones in on Mr. Humphries's statements that Mr. Golatt had opportunities for growth "in planning and organizing" and "further empowering [his] team."  Def.'s Br. 10 (citation omitted).  That certainly may have been the case, but this statement is not sacrosanct, and it does not put matters in perspective.  He also made a similar statement regarding planning in Mr. Taylor's evaluation.  Helmut Schmidt, former Chancellor of Germany, once stated, "The biggest room in the world is the room for improvement."  His statement is simply a reflection that neither a country nor a person is perfect and that all countries and individuals can improve their performance.  Moreover, Def.'s reference to Mr. Humphries's statement has to be considered in light of other statements that he made.

For example, in the "General Comments" section of Mr. Golatt's evaluation, Mr. Humphries stated, "I really appreciate the way you manage your team."  Def.'s App. 216.  The word "appreciate," as used in the context by Mr. Humphries means, means "b: to value or admire highly."  Meriam-Webster's Collegiate Dictionary 61 (11th ed. 2014).  Further, the word "appreciate" is modified by the word "really," to make the statement highly complimentary.  Of course, no such statement was made in Mr. Taylor's evaluation because he did not manage or supervise anyone. Attorneys in a lawsuit are selective and point to matters that show their

respective clients in the most favorable light, but a jury needs to hear all relevant evidence, evaluate it, determine the credibility of witnesses, and decide how much weight to give to the evidence.

These statements by Mr. Humphries also underscore the reality that Mr. Taylor did not have any people to manage or supervise. They are further evidence that Mr. Golatt and Mr. Taylor were not similarly situated and, therefore, comparing the evaluations of the two men does little, if anything, to show an absence of pretext as Defendant contends.

### iii. Management Experience

Based on the record, there is insufficient evidence to show that Mr. Taylor had any managerial experience at the time of his promotion to Senior Manager of IT. To the contrary, the record does show that Golatt had several years of managerial or supervisory experience at a prior job and at PMNS. When Mr. Humphries testified in his deposition that he was aware that Mr. Taylor had managerial experience, Mr. Golatt's counsel objected because the answer was nonresponsive to the question asked. The question was whether Mr. Taylor was managing any persons at the time of his promotion from Application Support Lead—a nonmanagerial position— to Senior Manager of IT. Mr. Humphries answered that Mr. Taylor did not supervise anyone in his nonmanagerial position. Def.'s App. 31. Mr. Humphries further volunteered testimony that Mr. Taylor "definitely showed management acumen" and that his resume showed that "he had previously led as many as 50 people." The court **sustains** the objection because the testimony was nonresponsive to the question asked. Moreover, Mr. Taylor's resume is not part of the summary judgment record, and the court will not rely on evidence not in the record. *Id.* at 32.

### iv. Resumes of Messrs. Golatt and Taylor

As the court previously noted, Mr. Taylor's resume is not included in the summary judgment record. Plaintiff has submitted his resume, and it details his comprehensive experience

in information technology at PMNS and entities where he worked prior to being hired by PMNS. Plaintiff's resume also established that he had prior managerial experience before being hired by PMNS. On the other hand, the court has no resume of Mr. Taylor and nothing that sets forth his work history or managerial experience. Further, although Messrs. Taylor and Golatt may have been shown as equals on PMNS's organizational chart, this does not reflect the reality of the workplace—that is, the two men did not perform the same duties and have the same level of responsibility, as Mr. Taylor did not have management responsibilities. When Mr. Taylor was promoted to Senior Manager of IT, he effectively received a two-level promotion, and Mr. Golatt then reported to him. This matter has not been adequately addressed by Defendant. Once again, PMNS provides insufficient evidence to rebut or refute Plaintiff's extensive experience in information technology, or his managerial experience.

> *v. Mr. Humphries's Failure to Discuss the Basis for His Decision to Promote Mr. Taylor*

Mr. Golatt testified that Mr. Humphries called him into the office and told him that he would be reporting to Mr. Taylor after his promotion to Senior Manager of IT. Pl.'s App. 11. Plaintiff expressed concern and asked about the change and informed Mr. Humphries that he did not understand the "changes," and inquired as to how Mr. Humphries decided to promote Mr. Taylor. *Id.* at 11-12. Mr. Humphries never answered Mr. Golatt's question as to how he made the decision the promote Mr. Taylor and never stated that Mr. Taylor clearly had more experience than he (Mr. Golatt) did. *Id.* at 12. While this conversation between Mr. Golatt and Mr. Humphries does not carry the day for him, the jury should be able to hear testimony regarding Mr. Humphries's reticence or refusal to inform Mr. Golatt why Mr. Taylor was selected for the Senior Manager of IT, and determine whether this evidence lends support to establish pretext. This information is relevant to Mr. Humphries's credibility.

*vi. Trip to Europe*

In September 2017, Plaintiff took an overseas trip to Europe.  The parties do not dispute that the trip took place; however, they disagree on some key facts surrounding the trip. Mr. Humphries testified in his deposition that Plaintiff did not ask or check with him before purchasing the ticket in February 2017, and that Plaintiff's failure showed poor judgment on his part.  Def.'s App. 58.  Plaintiff disagreed and testified that at the time he booked the trip, the date for scheduled maintenance work was "up in the air" and when the trip was booked, "we hadn't really settled on what actually we were going to do.  It was still up in the air because he [Mr. Humphries] had things he needed to purchase."  *Id.* at 19-20.  Mr. Golatt further testified that the maintenance in question took place in 2016 and 2018 during the three days after Labor Day, and stated that "it was a yearly thing that there was a shutdown at [PMNS] for the few days following Labor Day."  *Id.* at 20.  This evidence appears to favor Defendant; however, in light of other findings, the court believes that the jury should weigh and assess it rather than the court, as Plaintiff's testimony could be interpreted that in 2017, the scheduled maintenance period was "up in the air" and a date had not been determined for 2017 for the reasons stated by Mr. Golatt. The jury should decide the weight to be given this evidence.

For all the reasons set forth in this subsection, the court concludes that Plaintiff has come forward with sufficient evidence to raise a genuine dispute of material fact as to whether he was clearly or substantially better qualified than was Mr. Taylor for the position of Senior Manager of IT.  The question is close, but the vast majority of Defendant's argument is tied to the evaluations of Messrs. Golatt and Taylor.  The problem with this argument is that the individuals involved did not have the same job duties and responsibilities, and, thus, were not similarly situated.  Defendant

never acknowledges this with respect to any of its arguments; however, this distinction is of paramount significance.

Plaintiff has definitely succeeded in setting forth a prime facie case, and he has produced sufficient evidence to show that a reasonable jury could conclude that he was clearly or substantially better qualified than Mr. Taylor. "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of facts to conclude that the employer unlawfully discriminated." *Ash*, 546 U.S. at 457 (citation omitted). In other words, the court concludes that Plaintiff has raised a genuine dispute of material fact as to whether race was the but-for cause of Mr. Golatt not being promoted to the position of Senior Manager of IT. The court, of course, does not intimate or make any findings as to whom will prevail at trial. The jury will make that decision.

## IV.    Conclusion

For the reasons herein explained, the court **grants in part and denies in part** Defendant's Motion. The court **grants** the Motion insofar as it relates to Plaintiff's arguments 1, 3, and 4, as listed on pages 9-10 of this opinion. The court **denies** the Motion with respect to whether Mr. Golatt was substantially or clearly better qualified than was Mr. Taylor for the position of Senior Manager of IT.

**It is so ordered** this 3rd day of March, 2023.

Sam A. Lindsay
United States District Judge